IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| BEUNKA ADAMS | § | |
| | § | |
| V. | § | NO. 5:07cv180 |
| | § | |
| BRAD LIVINGSTON, | § | |
| DIRECTOR | § | |

## REPLY TO DIRECTOR'S RESPONSE

TO THE HONORABLE UNITED STATES CHIEF DISTRICT JUDGE, DAVID J. FOLSOM:

COMES NOW, Beunka Adams, Petitioner, files this Reply to the Director's Response to his Petition for Writ of Habeas Corpus, as follows:

## Claim 1

The Director spends considerable time in response to Claim 1, explaining why the juror's statement to investigator Sonny Monteagudo is not admissible. While the Director may be correct with respect to admissibility, he misses the point. The issue is to be evaluated by the objective "reasonable juror" standard. The juror's statement simply states the obvious – in a capital prosecution where a human being's life is at stake, it is unimaginable that the defense would not let the jury know that someone else was the triggerman. In fact, it is so apparent that, in the 2009 Texas Legislative session, House Bill 2267 addressed the extent of a

1

defendant's criminal responsibility for the conduct of a co-conspirator in a capital case. As originally submitted, it stated that a defendant who was found guilty in a capital murder case only as a party under TEX. PEN. CODE § 7.02(b) would not be eligible for a sentence of death, and the state would have been prohibited from seeking the death penalty in any case in which the defendant's liability was premised solely on that section.[1]

Of course, in Mr. Adams' trial, as in any capital case, all it would have taken was one reasonable juror to vote against the death penalty for the defense to have been successful. The decision not to introduce evidence that Mr. Cobb was the triggerman out of fear that the State would be allowed to introduce other potentially damaging evidence, was no decision at all. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. 668, 686 (1984). No outside observer – aware of the omitted triggerman evidence – would believe the trial for Mr. Adams produced a just result.

Misguided trial strategy or tactics may rise to the level of ineffectiveness

---

[1] The provision was struck after the House passed the bill, as the result of a threat of veto from Governor Perry.

2

where there is no plausible basis to support them. *Ex Parte Burns,* 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). The term "trial strategy" may not be used as an explanation to justify trial counsel's errors; unreasonable decisions by counsel constitute no real trial strategy at all. *See, Moore v. Johnson*, 194 F.3d 586, at 604 (5th Cir. 1999)("The Court is . . . not required to condone unreasonable decisions parading under the umbrella of strategy."). The trial court found that the decision not to use the above evidence was trial strategy. This was an objectively unreasonable determination of the facts in light of the evidence and is not entitled to deference. 28 U.S.C. § 2254(d)(2). While a reasonable professional judgment to pursue a certain strategy should not be second guessed, *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983), where that professional judgment is unreasonable, it is ripe for relief. Trial counsels' conclusion that telling the jury that Mr. Adams was not-the-triggerman would somehow damage him by allowing the jury to hear that Mr. Adams may have kicked the women – a fact that had already been developed – was no decision at all, and was, under the circumstances, objectively unreasonable. The cloak of "trial strategy" cannot cover all mistakes. Moreover, there is a "crucial distinction between strategic judgment calls and plain omissions", and this case presents the latter. *Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992). This was an objectively unreasonable trial strategy, which simply

cannot be justified as a tactical decision.

## Claims 2 and 3

The Director predictably asserts that there are independent and adequate state procedural barriers to consideration of these claims. The Director cites *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006), to the effect that there are excuses to the application of a procedural bar where a petitioner shows "cause and prejudice." The Director is incorrect in stating that Mr. Adams has shown neither.[2] In subpart C to Claim 3 (on page 25) of the Petition, Mr. Adams asserted his counsel's ineffectiveness as cause, citing *Edwards v. Carpenter*, 120 S.Ct. 1587 (2000) and *Murray v. Carrier*, 477 U.S. 478, at 488-89 (1986). In fact, the entire discussion relating to Claim 2 is, in practicality, a discussion about why there is cause and prejudice to consider Claim. 3.

The prejudice to Mr. Adams is strong. As demonstrated by the Legislative attempt to correct this situation in House Bill 2267, as set forth above, being convicted under the law of parties hardly supports the imposition of the death penalty. Mr. Adams was squarely prejudiced by the deprivation of a properly instructed jury on the law of parties, which jury considered the evidence on a lesser, insufficient burden of proof.

---

[2] Response at pages 24-25.

Substantively speaking, the essence of Mr. Adams' claim is that a jury merely finding, in a general verdict, that he **anticipated** death is not enough to warrant the death penalty.[3] The jury did not make a finding of major participation as required by *Tison*. *Enmund* and *Tison* dictate a necessity that the jury to find that Mr. Adams was a substantial participant in the robbery and that he acted with reckless indifference to human life, or that he himself committed the murder. It did not do so here.

The Director cites to *Clark v. Johnson*, 227 F.3d 273, 218 (5th Cir. 2000), as Fifth Circuit authority on Claim 3. *Clark* calls for the federal habeas court to examine the entire course of the state court proceedings in order to determine whether, at some point in the process, the requisite finding as to the defendant's culpability has been made. Essentially, *Clark* asks the federal district court to make the *Enmund* determination instead of the jury alone. *Clark* is a pre-*Ring* case, and is outdated authority following *Apprendi* and its progeny.

In light of *Apprendi v. New Jersey*, 530 U.S. 466, (2000), and *Ring v.*

---

[3] In *Enmund v. Florida*, 458 U.S. 782, 798 (1982), the Court held that the death penalty could not be imposed upon a defendant who, though involved in a felony, did not kill, attempt to kill, intend that a killing take place, or anticipate that lethal force would be used. *458 U.S. at 798*. In *Tison v. Arizona*, 481 U.S. 137, 150 (1987), the court qualified its holding in *Edmund,* stating that the *Eighth Amendment* did not prohibit execution of a felony murder defendant, who did not kill or attempt to kill, if the jury finds that: (1) the defendant was a major participant in the felony committed; and (2) the defendant demonstrated reckless indifference for human life.

*Arizona*, 536 U.S. 584, (2002), it is necessary for a jury, rather than a judge, to make the factual determinations under *Tison*.[4]  In *Foster v. Quarterman*, 466 F.3d 359 (5th Cir. 2006), the Fifth Circuit considered whether the requisite *Tison* findings had been made, but refused to make a definitive determination as to whether *Apprendi* and *Ring* were applicable, noting that those cases were decided after the Supreme Court denied review from the defendant's direct appeal, and therefore even if they were applicable, they did not apply retroactively.  *Id.* at 369-70.  The *Foster* court went on to consider whether any state court had made the required *Tison* findings, rather than limiting their review to determining whether the jury had made them. *Id.*, at 370.  Here, *Apprendi* and *Ring* predated the direct appeal for Mr. Adams and have applicability.

    Essentially, *Clark* asks the court to review the record to determine if any court had found that Mr. Adams had a been substantial participant in the robbery and that he acted with reckless indifference to human life, or that he himself committed the murder.  Since "ancticipating" that death would occur is clearly

---

[4] The Federal Constitution's jury-trial guarantee assigns the determination of certain facts to the jury's exclusive province.  Under that guarantee, the Supreme Court held in *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  It thereafter applied *Apprendi*'s rule to facts subjecting a defendant to the death penalty in *Ring*; See *also, Oregon v. Ice*, 129 S.C.t 711, 716 (2009).

insufficient, essentially with the charge given to the jury, the Director would have a judge find the aggravating absence of "anticipating" that death would occur. "Capital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, 536 U.S. at 589. Based solely on the jury's verdict finding Mr. Adams guilty of "anticipating" that death would occur, the maximum punishment he could have received was life imprisonment. A defendant may not be "exposed . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Apprendi*, 530 U.S. at 483.

By allowing Mr. Adams' jury to make findings constitutionally insufficient to support the death penalty on a general verdict, and then allowing an appellate court to test the constitutional mettle based upon a cold record review, flies in the face of *Apprendi* and *Ring*. That procedure is does nothing more than substitute judges for juries, a practice forbidden by *Ring*.[5]

---

[5] *Ring* struck down Arizona's practice whereby, following a jury adjudication of a defendant's guilt of first-degree murder, the trial judge, sitting alone, determined the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty. 536 U.S. at 563. Ring specifically overruled *Walton v. Arizona*, 497 U.S. 639 (1990), wherein the Supreme Court had previously held that Arizona's sentencing scheme was compatible with the *Sixth Amendment*.

                    Respectfully submitted,

                    */s/*    *Thomas Scott Smith*
By:_____
                    Thomas Scott Smith
                    State Bar Number 18688900
                    120 South Crockett Street
                    P.O. Box 354
                    Sherman, Texas 75091-0354
                    e-mail: smithlaw@airmail.net
                    Facsimile (903) 870-1446
                    Telephone (903) 868-8686

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of this Petition for Writ of Habeas Corpus upon counsel for Respondent, Tina Miranda, Office of the Attorney General of Texas, P.O Box 12548, Austin, Texas  78711-2548, by placing electronic delivery, to the above address, this January 4, 2010.

                    */s/*    *Thomas Scott Smith*

                    _____
                    Thomas Scott Smith