## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## TEXARKANA DIVISION

| | | |
|---|---|---|
| **BEUNKA ADAMS,** | § | |
| Petitioner, | § | |
| v. | § | No. 5:07cv180 |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal** | | |
| **Justice, Correctional Institutions** | § | |
| **Division,** | | |
| Respondent. | § | |

## <u>MEMORANDUM OPINION</u>

Beunka Adams ("Adams"), an inmate confined to the Texas Department of Criminal Justice, Correctional Institutions Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Adams challenges his capital murder conviction and death sentence imposed by the 2nd Judicial District Court of Cherokee County, Texas, in cause No. 15057, styled *The State of Texas vs. Beunka Adams.* Respondent Rick Thaler ("the Director") answered the application. Having considered the circumstances alleged and authorities cited by the parties, and having reviewed the record, the Court finds that the application is not well-taken and it will be denied.

**Facts** [1]

On September 2, 2002, Candace Driver and Nikki Dement were working at BDJ's

---

[1] This statement of facts is taken from the unpublished opinion in *Adams v. State*, No. AP-75,023, 2007 WL 1839845 (Tex. Crim.App. June 27, 2007).

1

convenience store in Rusk, Texas. Kenneth Vandever, a customer described as mentally challenged who often "hung around" at BDJ's and helped take out the trash, was in the store with Candace and Nikki when two masked men entered the store. One of the men was armed with a shotgun and demanded money. The two men were later identified as (Adams) and his co-defendant, Richard Cobb.

After taking the money from the cash register, (Adams) demanded the keys to a Cadillac parked outside. After Candace produced her car keys, (Adams) forced her, along with Nikki and Kenneth, into the car. As (Adams) drove Candace's car, Nikki said, "I know you, don't I?" (Adams) said "Yes," and took his mask off. When they arrived at a remote pea patch near Alto, Cobb pointed the shotgun at Candace and Kenneth and (Adams) ordered them to get into the trunk of the Cadillac. (Adams) then took Nikki to a more secluded spot, away from the car, and sexually assaulted her. Later, (Adams) led Nikki back to the Cadillac and let Candace and Kenneth out of the trunk, but he tied the two women's arms behind their backs and made them kneel on the ground while the two robbers made their escape. (Adams) and Cobb seemingly developed a plan to leave Kenneth untied so that he could free the women once (Adams) and Cobb were far enough away from the scene. (Adams), however, believed that Kenneth was attempting to untie the women too soon, so he returned and ordered Kenneth to kneel behind the women. Candace heard Kenneth say that "it was time for him to take his medicine and that he was ready to go home."

The women then heard a single gunshot. (Adams) asked, "did we get anybody?" And Candace said, "No." Shortly thereafter, a second shot was fired, and Kenneth cried out, "They shot me." Kenneth Vandever died from the gunshot wound. Seconds later, Candace heard another shot, and Nikki fell forward. Candace fell forward as well, pretending to be hit. (Adams) approached

Candace and asked her if she was bleeding. He was carrying the shotgun. Candace did not immediately answer in the hope that (Adams) would believe she had been killed. (Adams) then said, "Are you bleeding?" You better answer me. I'll shoot you in the face if you don't answer me." When Candace said, "No, no, I'm not bleeding," (Adams) shot her in the face, hitting her lip.

(Adams) and Cobb then turned to Nikki, asking her the same questions. (Adams) kicked Nikki for about a minute, joined by Cobb. Then they picked her up by her hair and held a lighter to her face to see if she was still alive. Candace feigned death for fear of being shot again. She heard Cobb say about Nikki, "She's dead. Let's go." That was the only time that Candace ever heard Cobb speak. After (Adams) and Cobb left, Candace got up and ran barefooted down the deserted country road and banged on the door of the first house she saw.[2]

**Procedural history**

Adams was indicted for capital murder pursuant to TEX. PENAL CODE ANN. § 19.03(a)(2) for intentionally killing Vandever in the course of committing another felony, in this case robbery, kidnaping and/or aggravated sexual assault. In August of 2004 he was convicted, and based upon the jury's answers to the Texas special sentencing issues, he was sentenced to death.[3] His conviction and sentence were confirmed on direct appeal, *see Adams v. State*, No. AP-75,023, 2007 WL 1839845 (Tex. Crim.App. June 27, 2007), and his request for a writ of *certiorari* was denied. *See Adams v. Texas*, 552 U.S. 1145, 128 S.Ct. 1071 (2008). Adams also filed two petitions for post-conviction

_____

[2] After Candace had left, Nikki got up, and after walking in a different direction, found help at another house. Shortly after the women spoke with authorities, Cobb and Adams were located and arrested.

[3] Those issues are (1) whether there is a probability that the defendant would commit criminal acts of violence which would constitute a continuing threat to society, (2) whether the defendant actually caused the death of the deceased or did not actually case the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken, and (3) whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment, rather than a death sentence, be imposed. *See* TEX. CODE CRIM.PROC. art. 37.071.

relief.  The first was denied, *see ex Parte Beunka Adams*, No. WR-68,066-01, 2007 WL 4127008

(Tex.Crim.App. Nov. 21, 2007), and the second was dismissed as an abuse of the writ.  *See Ex parte*

*Beunka Adams*, No. 68,066-02, 2009 WL 1165001 (Tex.Crim.App. Apr. 29, 2009).  On January 8,

2009, Adams filed an application for a writ of *habeas corpus* in this Court.

**Claims**

Adams raises ten claims for relief:

1.  His Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to present evidence that Richard Cobb judicially confessed to the murder of Kenneth Vandever.

2. His Sixth Amendment right to effective assistance of counsel was violated by trial and appellate counsel's failure to ensure that the jury was properly instructed in the punishment- determination phase of the trial.

3.  The sentence of death is unconstitutional pursuant to the Eighth Amendment because of fatally flawed jury instructions in the punishment- determination phase of the trial.

4. His Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to investigate and fairly challenge the State's expert on future dangerousness.

5.  His Sixth Amendment right to effective assistance of appellate counsel was violated by the failure to recognize and brief the erroneous admission of "extrinsic victim impact testimony" during the punishment- determination phase of his trial.

6.  His Eighth and Fourteenth Amendment rights were violated because the Texas death penalty statute impermissibly placed the burden of proving the mitigation issue on Mr. Adams, rather than requiring the State to prove the absence of mitigating factors beyond a reasonable doubt.

7.  His Eighth and Fourteenth Amendment rights were violated because the Texas death penalty statute impermissibly limits the jury's consideration of mitigating evidence.

8.  The Texas death penalty statute (which fails to inform jurors that the jury's failure to reach a unanimous verdict on any issue at the punishment-determination phase of the trial would result in a life sentence) violated his rights against cruel and unusual punishment and to due process of law under the Eighth and Fourteenth Amendments.

9. The State's failure to provide meaningful appellate review of the insufficient evidence to support the jury's verdict with regard to mitigating evidence violates the Eighth Amendment's prohibition against cruel and unusual punishment.

10. The Texas death penalty statute violates the Eighth and Fourteenth Amendments because it allows a jury unbridled discretion to determine who should live or die.

**Standard of review**

Because Adams's application for *habeas corpus* was filed after 1996, the Anti-Terrorism and Effective Death Penalty Act "AEDPA" applies to his claims. Under the AEDPA, a state prisoner seeking to raise claims in a federal petition for *habeas corpus* ordinarily must fairly present those claims to the state court and thereby exhaust his state remedies. *Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001), *cert. denied sub nom. Martinez v. Cockrell*, 534 U.S. 1163 (2002). If an applicant raises a claim in his federal *habeas corpus* application that was not fairly presented to the state courts, the federal court has three options: It can direct the applicant to return to state court and present the claim to the state court in a successive petition, either by dismissing the entire petition without prejudice, *see Rose v. Lundy*, 455 U.S. 509, 520-22 (1982), or by staying the federal proceedings, s*ee Rhines v. Weber*, 544 U.S. 269, 278 (2005). If it is entirely clear that the state court would refuse to consider the merits of the claim if the applicant were to return to state court and present it in a successive petition, the federal court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). If it is not entirely clear that the state court would refuse to hear a successive petition containing the new claims, however, the federal court will allow the state court the first opportunity to consider them. *See Wilder v. Cockrell,* 274 F.3d 255, 262-63 (5th Cir. 2001). Finally, the Court can deny the claim on its merits. *See* 28 U.S.C. § 2254 (b)(2).

Federal courts generally do not review claims that the state courts have refused to review based on adequate and independent state grounds unless the applicant can establish either that he had good cause for failing to fairly present his claims, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the federal court's failing to address the claims on their merits would result in a fundamental miscarriage of justice, because the petitioner is actually innocent of the offense. *See Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001).

If the state court denied the claim on its merits, a federal court may only grant relief if the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, *see* 28 U.S.C. § 2254 (d)(1), or the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, *see* 28 U.S.C. § 2254 (d)(2). In reviewing a state court decision, this Court reviews questions of law and mixed questions of law and fact under section 2254(d)(1), and reviews questions of fact under section 2254(d)(2). The state court's findings of fact are presumed to be correct, and the applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Richardson v. Quarterman,* 537 F.3d 466, 472-73 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 1355 (2009). If a claim was presented to the state court but not adjudicated, this Court will determine it *de novo,* just as factual issues not determined by the state court are determined *de novo*. *See Miller v. Johnson,* 200 F.3d 274, 281 n.4 (5th Cir.), *cert. denied,* 531 U.S. 849 (2000).

If the state court based its decision on the alternative grounds of procedural default and rejecting the claim on its merits, the general rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, *see Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006), but the rule is not absolute; a court can look past the question of procedural default if the claims can be resolved more easily on the merits. *See Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004).

**Analysis**

Adams's first claim is that his Sixth Amendment right to effective assistance of counsel was violated by his trial counsel's failure to present evidence that Richard Cobb judicially confessed to the murder of Kenneth Vandever. This claim was adjudicated on the merits by the state court, *see* state *habeas corpus* record ("SHR") Vol. 1 p. 298, Conclusion of Law 21, so the issue for this Court is whether the state court's decision was directly contrary to, or the result of an unreasonable determination of, clearly established federal law, as determined by the Supreme Court of the United States.

Cobb was tried before Adams, and took the stand in his own defense, both in the guilt determination phase and in the punishment determination phase of his capital murder trial. Cobb admitted that he shot Vandever, but he claimed that Adams told him to do it, and said that he (Cobb) was afraid to disobey Adams. At the close of the punishment determination phase of Adams's trial, the prosecution conceded that neither Driver nor Dement saw who shot Vandever, and that a defense witness had testified that Cobb had said to him that he (Cobb) shot Vandever, while a prosecution witness had testified that Adams said to him that he (Adams) had shot the victim. The prosecution

argued that Adams was the person who controlled the events from beginning to end, and regardless of who pulled the trigger "[I]t was clearly Beunka Adams was helping kill Kenneth Vandever." Adams's attorneys were aware that Cobb had admitted in his own trial that he was the person who fatally shot Vandever, but they did not call him as a witness or attempt to introduce any of his testimony at Adams's trial. In *Wiggins v. Smith,* 539 U.S. 510, 521 (2003), the Supreme Court of the United States held that in order to obtain relief on a claim of ineffective assistance of counsel an inmate must establish that his counsel's performance was deficient, which is defined as unreasonable under prevailing professional norms, and also establish that the deficiency prejudiced the defense, which is defined as a reasonable probability that, had the attorney acted reasonably, the result in the case would have been different. Counsel is expected to conduct a thorough investigation into the available evidence and potential defenses; if this is done, his strategic and tactical decisions are reviewed with considerable deference; a court cannot find an attorney's conduct deficient simply because it disagrees with his choices.

Adams does not contend that his trial attorneys failed to thoroughly investigate the testimony Cobb gave in his own trial, so the first question for the Court is whether, considering the strong presumption that counsel's strategic and tactical choices were reasonable, counsel's decision not to either call Cobb as a witness or introduce his trial testimony constituted deficient performance. Adams's lead counsel testified that his defense strategy was to establish "first of all, that Richard Cobb shot Mr. Vandever and that Mr. [Adams] didn't have any – wasn't aware that he was going to do that. And that Mr. Adams actually saved the life of Candace Driver by deliberately missing her when Richard Cobb ordered him to shoot her." Reporter's Record ("R.R."), Vol. 1, p.8. Counsel also testified that the prosecution offered to stipulate that Richard Cobb shot and killed Vandever, but only

8

if the defense stipulated that Adams shot Nikki Dement. *See* R.R. Vol. 1 at 16. According to defense counsel, "[W]e didn't want to stipulate that Nikki – that [Adams] shot Nikki . . . that was against everything we were trying to prove at the punishment stage." *Id.* Counsel also testified that the prosecution informed him that if the defense attempted to introduce Cobb's testimony that he killed Vandever, they would have been entitled to introduce the rest of Cobb's testimony, including his testimony that he only shot Vandever because he was threatened by Adams, and that Adams shot Driver and Dement.

Because Adams was indicted for capital murder based on the law of parties, the fact that it was Cobb who actually shot Vandever was not a defense to the capital murder charge. Adams contends, however, that this fact is so important to the jury's determination of whether a defendant should receive the death penalty that even in a law of parties case, no reasonable attorney would ever choose to forego offering conclusive proof that a co-perpetrator actually did the killing. Indeed, Adams's counsel testified that the first element of their defense was that Cobb, not Adams, was the actual killer.

Adams supplies no authority to support his implicit contention that the prevailing professional norm in capital murder litigation is to always offer the confession of a co-perpetrator in a law of parties case if the co-perpetrator was the actual killer. Absent such a bright line rule, the Court must conduct a case specific analysis, and it finds, for two reasons, that Adams's counsel's decision to forego introducing Cobb's testimony from the punishment determination phase of his own capital murder trial was not unreasonable. First, Cobbs's testimony was not the only evidence available on the point: the defense introduced evidence that Cobb had confessed to a jail house informant that he killed Vandever. Second, had Adams introduced Cobb's testimony from the punishment

determination phase of his own trial, the prosecution would have introduced Cobb's testimony from the guilt determination phase of his trial under the Rule of Optional Completeness [4] and this testimony would have contradicted Adams's contention that he did not direct both the kidnaping and shootings. For these reasons, the Court finds that the state court's finding that Adams's trial counsel's decision not to introduce evidence - either by live testimony or by the introduction of a transcript of the punishment determination phase of Richard Cobb's capital murder trial, that Cobb killed Vandever - was not unreasonable in light of the evidence presented in Adams's state post-conviction proceedings.

Because Adams has failed to establish that his trial counsel's performance was deficient, it is unnecessary for the Court to analyze whether there is a reasonable probability that the result in Adams's case would have been different had his trial counsel introduced Cobb's confession that he (Cobb) killed Vandever. The state court's rejection of Adams's first claim was neither contrary to nor the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in *Wiggins.* The Court will deny this claim.

Adams's second claim is that his Sixth Amendment right to effective assistance of counsel was violated by trial and appellate counsel's failure to ensure that the jury was properly instructed in the punishment- determination phase of the trial. This claim was dismissed by the state court as an abuse of the writ, *see Ex parte Beunka Adams*, No. 68,066-02, 2009 WL 1165001 (Tex.Crim.App. Apr. 29, 2009). In *Coleman v. Thompson,* 501 U.S. 722, 750 (1991), the Supreme Court of the United States held that in *habeas corpus* proceedings a federal court may not consider a claim that the last

---

[4] TEX R. EVID. 107 provides:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

state court rejected on the basis of an independent and adequate state ground. In the present case, the state court dismissed the claim because it did not meet the requirements of Texas Code Crim. Proc. art. 11.071 § 5, and therefore constituted an abuse of the writ. The "abuse of the writ" ground for default has been found independent and adequate for *habeas corpus* purposes, *see Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2378 (2009). Adams makes two arguments as to why the Court should address the merits of his claim. His first argument is that the state court's dismissal was not truly independent, meaning not clearly based exclusively on state grounds, because some dismissals made pursuant to Article 11.071 § 5 are actually based upon, or at least intertwined with, federal law. *See e.g. Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007). Article 11.071 § 5 provides that if a successive application for a writ of *habeas corpus* is filed after filing an initial application, a court may not consider the merits or grant relief on the application unless the application contains specific facts establishing that:

> (1) the current claims and issues have not been presented previously because the factual or legal basis of the claim was unavailable on the date the applicant filed the initial application;

> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the three sentencing issues.

Adams correctly points out that any decision to dismiss pursuant to subsections (2) or (3) would necessarily involve deciding questions of federal law, and he also correctly points out that the Texas Court of Criminal Appeals frequently dismisses cases as abuses of the writ on the grounds that the inmate failed to allege sufficient facts to make a *prima facie* case of a constitutional law violation, which also necessarily involves answering federal law questions. The problem with his argument is

that the most likely reason for the state court's dismissal is one which is not intertwined with federal law: the claim could have been presented previously because the factual and the legal basis of the claim was available on the date Adams filed his initial state application for post-conviction relief. Because Adams does not dispute the correctness of this finding, the Court will not presume that the state court relied on a different reason for dismissing this claim.

Adams's second argument is that assuming the Court finds that this claim was procedurally defaulted, the ineffective assistance rendered by his appellate and state post-conviction counsel constitutes cause for his default and he was prejudiced by the inability to raise this claim because it has substantial merit. The problem with this argument is that while the ineffective assistance of appellate counsel can constitute cause for failing to raise the claim on appeal, the ineffective assistance of state post-conviction counsel cannot constitute cause for failing to raise the claim in his initial petition for post-conviction relief, *see In re Goff*, 250 F.3d 273 (5th Cir. 2001), and *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004).

The Court notes that of the two circumstances which the Supreme Court in *Coleman* held could excuse a procedural default - "cause and prejudice" and "fundamental miscarriage of justice," Adams has explicitly raised only the cause and prejudice exception. Because the nature of the substantive claim Adams makes overlaps with the elements of the fundamental miscarriage of justice exception, the Court will address that issue *sua sponte*.

To establish that a fundamental miscarriage of justice has occurred in the capital sentencing context, a condemned inmate must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under the applicable state law. *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). Adams points out that a person whose

involvement in a capital murder crime was sufficient to be convicted as a party to the offense is not thereby eligible for the death penalty unless his participation in the crime was major and he displayed at least reckless indifference to human life. *See Tison v. Arizona*, 481 U.S. 137, 158 (1987). He then contends that under the wording of the jury instructions in the punishment determination phase of his own trial, the jury was required only to find that he "anticipated" that someone could be killed in order to meet the applicable special sentencing issue. He concludes that:

> [O]ne or more jurors could have believed that Mr. Adams "anticipated" that Mr. Vandever would be killed at some time during the criminal episode, but that he did not intend for Mr. Vandever to die and he did not act with indifference to human life. In that circumstance, Mr. Adams would not be eligible for the death penalty.

The problem with this argument is that alleging that one or more jurors could have found Adams ineligible for the death penalty is far short of showing by clear and convincing evidence that no reasonable juror would have found Adams eligible for the death penalty. Accordingly, Adams cannot establish that a fundamental miscarriage of justice would occur if the Court fails to address the merits of his second claim. Because Adams cannot overcome the procedural default of his second claim, it will be dismissed with prejudice.

Adams's third claim is that his sentence of death is unconstitutional pursuant to the Eighth Amendment because of fatally flawed jury instructions in the punishment- determination phase of his trial. This claim was also dismissed by the state court as an abuse of the writ, *see ex Parte Beunka Adams*, No. 68,066-02, 2009 WL 1165001 (Tex.Crim.App. Apr. 29, 2009). Adams makes the same arguments as to why the is claim is not barred from review under the doctrine of procedural default that he made in his second claim, so for the reasons stated in its analysis of that claim the Court will dismiss Adams's third claim with prejudice.

13

Adams's fourth claim is that his Sixth Amendment right to the effective assistance of counsel was violated by trial counsel's failure to investigate and fairly challenge the State's expert on future dangerousness. This claim was adjudicated on the merits by the state court, *see* SHR Vol. 1 pp. 299 - 300, Conclusions of Law 26-30, so the issue for this Court is whether the state court's decision was directly contrary to, or the result of an unreasonable determination of, clearly established federal law, as determined by the Supreme Court of the United States.

As stated previously, in *Wiggins* the Supreme Court held that in order to prevail on a claim of ineffective assistance of counsel, an inmate must establish both that his counsel's performance was deficient, and that there is a reasonable probability that, had the attorney acted reasonably, the result in the case would have been different.

Dr. Tynus McNeel testified on behalf of the prosecution at the punishment-determination phase of Adams's trial, and opined that there was a probability that Adams would commit future acts of criminal violence which would constitute a continuing threat to society. Adams contends that under Texas law, expert testimony based upon a scientific theory must show by clear and convincing evidence that the evidence is both reliable and relevant to the assist a trier of fact in its fact finding duty, citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). He points out that the court in *Kelly* held that to be reliable, the evidence must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3), the technique applying the theory must have been properly applied on the occasion in question. He argues that his trial counsel did not competently cross-examine question Dr. McNeel about these three criteria.

Adams's argument has two problems. First, the rule in *Kelly* has been modified as to circumstances like the present case. As regards expert testimony on the issue of the likelihood of a

defendant's future dangerousness in a capital murder case,

> *Kelly's* requirement of reliability applies, but with less rigor than to the hard sciences. When social sciences are at issue] the appropriate questions are (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies on, or utilizes the principles involved in the field.

*Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998). Because *Nenno*, not *Kelly*, supplies the legal standard for the admissibility of expert testimony on the issue of future dangerousness in Texas, the Court cannot find that the failure to cross-examine a future dangerousness expert witness on the basis of the *Kelly* criteria constitutes deficient performance. Second, the Court notes that Adams did not even allege, much less establish, that he was prejudiced by his counsel's cross-examination of Dr. McNeel. The Court finds that the state court's rejection of this claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Wiggins*. The Court will deny Adams's fourth claim.

Adams's fifth claim is that his Sixth Amendment right to effective assistance of appellate counsel was violated by the failure to recognize and brief the erroneous admission of "extrinsic victim impact testimony" during the punishment- determination phase of his trial. This claim was adjudicated on the merits by the state court, *see* SHR Vol. 1 pp. 298 - 299, Conclusions of Law 23-25, so the issue for this Court is whether the state court's decision was directly contrary to, or the result of an unreasonable determination of, clearly established federal law, as determined by the Supreme Court of the United States.

During the punishment determination phase of Adams's trial, Vandever's father testified about his son's character and the impact of his son's death on the family. This type of evidence is known

as victim impact testimony.  In *Booth v. Maryland*, 482 U.S. 496, 501-02 (!987), and *South Carolina v. Gathers*, 490 U.S. 805, 811-12 (1989), the Supreme Court of the United States held that victim impact evidence was inadmissible, but in *Payne v. Tennessee*, 501 U.S. 808, 824-25 (1991), the Court held that such evidence could be admitted unless its prejudicial effect greatly outweighed its relevance to the sentencing issues.   The prosecution also called Nikki Dement, who testified about the wounds she received and about their effect on her life.   The defense objected to this evidence, which it characterized as "extrinsic victim impact testimony," on the grounds that Adams was on trial for killing Vandever, not shooting Dement, but the objection was overruled.   On direct appeal, Adams did not claim that the trial court erred in denying his objection.   In his state post-conviction proceedings, Adams claimed that his appellate counsel rendered ineffective assistance by failing to do so.

As stated previously, to prevail on a claim of ineffective assistance of counsel, an inmate must establish both that his counsel's performance was deficient, and that there is a reasonable probability that, had the attorney acted reasonably, the result in the case would have been different.  *Wiggins,* 539 U.S. at 521.  As applied to appellate counsel, the standard is that defendant must establish that his appellate counsel failed to discover and bring to the attention of the court a solid, meritorious argument based upon directly controlling precedent, and also establish that  if he had done so, there is a reasonable probability that the result of the appeal would have been different.  *Amador v. Quarterman*, 458 F.3d 397, 410-11 (5th Cir. 2006), *cert. denied*, 550 U.S. 920 (2007).  Adams contends that his appellate counsel should have argued that under controlling precedent, namely *Cantu v. State*, 939 S.W.2d 627 (Tex.Crim.App.), *cert. denied*, 522 U.S. 994 (1997), extrinsic victim impact testimony is inadmissible in capital trials in Texas.

Assuming *arguendo* that Adams's appellate counsel's failure to raise this issue on direct appeal constituted deficient performance, the issue for the Court is whether there is a reasonable probability that, had he done so, the result in his appeal would have been different. To answer this question the Court must analyze *Cantu* and its progeny. In *Cantu*, the defendant was the leader of a gang who attacked and murdered two teen age girls, Ertman and Peña. Cantu was tried for the murder of Peña, but during the punishment determination phase of his trial the trial court admitted victim impact testimony by family members of Ertman. The Texas Court of Criminal Appeals ruled that because the prejudicial effect of this type of evidence would substantially outweigh its probative value in every case, the evidence was *per se* inadmissible.

In *Haley v. State*, 173 S.W.3d 510 (Tex. Crim.App. 2005), the defendant and her boyfriend were convicted at a joint trial of possession with intent to deliver cocaine. At the punishment determination phase of her trial, the prosecution introduced evidence that her boyfriend had been convicted previously of murdering a young man, and that she herself had been involved in the murder, although she had not been indicted for it. The prosecution then called the mother of the murder victim to testify about the good character of her son and the effect of his death upon her life. The Texas Court of Criminal Appeals held that victim impact evidence relating to an extraneous offense of murder was inadmissable in the punishment phase of Haley's cocaine possession trial.

In *Mathis v. State*, 67 S.W.3d 918 (Tex. Crim. App. 2002), the defendant was convicted for capital murder for killing two people in a shooting spree that also resulted in a third person being paralyzed from the neck down. The paralyzed victim testified as a witness to the incident during the guilt-determination phase of the trial, and at the punishment-determination phase, she testified to the nature of her injuries. The prosecution then introduced testimony by her caretaker- nurse as to the

17

nature of the care provided to the victim on a daily basis. Although the victim was situated similarly to the victim in the *Cantu,* case, the Texas Court of Criminal Appeals distinguished that precedent on the grounds that the evidence at issue was neither evidence of the victim's character, nor evidence about the effect of her loss upon her family, and held the evidence admissible.

In *Roberts v. State*, 220 S.W.3d 521 (Tex. Crim. App.), *cert. denied*, 552 U.S. 920 (2007), the defendant was convicted of capital murder and during the punishment-determination phase of his trial, the victim of a robbery the defendant had committed a few years before the murder testified about the emotional impact the robbery had made upon her life. Although the witness was situated similarly to the murder victim in *Haley,* the Texas Court of Criminal Appeals (without mentioning the *Haley* case) held that the evidence at issue was not victim impact evidence because it was not evidence about the effect of the extraneous offense crime on people other than the victim, and thus distinguishable from the victim impact evidence provided in *Cantu.*

Although Adams contends that the evidence presented by Dement in the punishment determination phase of his trial was similar to the evidence held inadmissable in *Cantu*, it appears to the Court more like the evidence held admissible in *Mathis*. In both *Mathis* and the present case, actual victims of the criminal episode which gave rise to the capital murder prosecution testified about the injuries they themselves suffered during the episode. Because there is not a reasonable probability that the Texas Court of Criminal Appeals would have decided the present case differently than it decided the *Mathis* case, Adams cannot establish the prejudice element of the ineffective assistance of counsel test. Accordingly, the State court's rejection of this claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court in *Wiggins*. The Court will deny Adams's fifth claim.

Adams's sixth claim is that his Eighth and Fourteenth Amendment rights were violated because the Texas death penalty statute impermissibly placed the burden of proving the mitigation issue on Mr. Adams, rather than requiring the State to prove the absence of mitigating factors beyond a reasonable doubt. This claim was adjudicated on the merits on direct appeal, *see Adams v. State*, No. AP-75,023, 2007 WL 1839845 slip op. *11-12 (Tex. Crim.App. June 27, 2007),[5] so the issue for this Court is whether the state court's decision was directly contrary to, or the result of an unreasonable determination of, clearly established federal law, as determined by the Supreme Court of the United States.

During the punishment determination phase of Adams's trial, the jury was required to make findings as to two special sentencing issues in order to determine whether he would receive a sentence of death. First, the jury was required to determine beyond a reasonable doubt whether there was a probability that Adams would commit acts of criminal violence which would constitute a continuing threat to society. Second, the jury was required to determine, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, whether significant mitigating evidence or circumstances exist which would warrant that a sentence of life imprisonment, rather than a death sentence, be imposed. There is no burden of proof on the second special issue.

In *Ring v. Arizona*, 536 U.S. 584, 602 (2002), the Supreme Court of the United States held that "the Sixth Amendment requires any fact making the defendant eligible for the death penalty must be unanimously found true, beyond a reasonable doubt, by the jury." Adams argues that because it is the

---

[5] In Adams' state post-conviction proceedings, the court held that the claim was not cognizable because it was raised and rejected on direct appeal, but also denied the claim on the merits. *See* SHR Vol. 1, p. 294, Conclusions of Law 1-3. Under these circumstances, the Court does not apply the analysis mandated in *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006), and *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004).

absence of mitigating evidence which made him eligible for the death penalty, the mitigation special sentencing issue must have the same burden of proof as the instruction in *Ring.*

In *Granados v. Quarterman,* 455 F.3d 529, 536 (5 th Cir.), *cert. denied*, 549 U.S. 1081 (2006), the United States Court of Appeals for the Fifth Circuit rejected this precise argument, stating:

> We are not persuaded that Texas violated any principle of ... *Ring* in the trial of this case. Specifically, it did not do so by not asking the jury to find an absence of mitigating circumstances beyond a reasonable doubt in addition to questions it required the jury to answer. Put another way, a finding of mitigating circumstances reduces a sentence from death, rather than increasing it to death.

And in *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir.), *cert. denied*, 546 U.S. 848 (2005), the Fifth Circuit stated that "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." In light of *Granados and Rowell*, this Court finds that the state court's adjudication of this claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Ring*. The Court will deny Adams's sixth claim.

Adams's seventh claim is that his Eighth and Fourteenth Amendment rights were violated because the Texas death penalty statute impermissibly limits the jury's consideration of mitigating evidence. The state court found that this claim was procedurally defaulted, but it also denied the claim on the merits. *See* SHR p.295, Conclusions of Law Nos. 7-9. As explained previously, under these circumstances, the general rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, but the court can look past the question of procedural default if the claim can be resolved more easily on the merits. In the present case, however, the Court finds that it is not easier to resolve the claim on the merits, so the Court will review the state's procedural default finding.

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the Supreme Court of the United States held that in *habeas corpus* proceedings a federal court will not consider a claim that the last state court rejected on the basis of an independent and adequate state ground. In the present case, the state court found this claim procedurally defaulted because Adams did not raise it in his direct appeal. This ground for default has been found adequate and independent for *habeas corpus* purposes, *see Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004), and Adams does not allege either that he had good cause for failing to raise the claim on direct appeal or that a fundamental miscarriage of justice will occur if the Court does not reach the merits of his seventh claim. The Court will dismiss this claim with prejudice.

Adams's eighth claim is that because the Texas death penalty jury instructions fail to inform jurors that the failure to reach a unanimous verdict on any issue at the punishment-determination phase of the trial would result in a life sentence violated his right not to be subjected to cruel and unusual punishment and his right to due process of law under the Eighth and Fourteenth Amendments. The state court found that this claim was procedurally defaulted, but it also denied the claim on the merits. *See* SHR p.296, Conclusions of Law Nos. 10-11. As explained on page seven above, in these circumstances the general rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, but the court can look past the question of procedural default if the claim can be resolved more easily on the merits. In the present case, the Director did not raise Adams's procedural default of this claim as a defense, and the Court finds that it is easier to resolve this issue on its merits. Under the AEDPA, a federal court can grant relief only if the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, or if the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Adams points out that under Texas law, the jurors are instructed that they must make unanimous findings as to all three special sentencing issues in order for a defendant to be sentenced to death. Specifically they must find unanimously that a defendant is likely to be a future danger to society, unanimously find that he either caused the death at issue or knew that such death was likely to occur, and unanimously find that there are not mitigating circumstances sufficient to justify sentencing the defendant to life imprisonment, rather than death. He also points out that the jurors are told that in order to make the opposite findings, at least ten of them must find that the defendant is not likely to be a future danger to society, or the defendant did not cause the death or know that death was likely to occur, or that there are mitigating circumstances sufficient to justify life imprisonment, rather than death. Jurors are instructed that if they make any of these opposite findings, the defendant will receive a life sentence. What the jurors are not told is that if they do not find all of the special sentencing issues unanimously against the defendant, a mistrial is not declared; instead, the defendant receives a life sentence. Accordingly, Adams contends that the inference jurors are likely to draw from the instructions - that at least ten jurors must answer one of the special issues in the defendant's favor in order for him to receive a life sentence - is incorrect.

In *Mills v. Maryland*, 486 U.S. 367, 374 (1988), the Supreme Court of the United States struck down a jury instruction which it found created a substantial probability that individual jurors may well have thought that they were prohibited from imposing a life sentence, rather than a death sentence, unless they agreed unanimously on specific grounds for mitigation. Adams contends that the

22

confusion in Texas law over the effect of a less than unanimous vote on any of the three special sentencing issues is similar to the confusion in *Mills* over the effect of less than unanimous agreement as to a specific mitigating factor. In *Hughes v. Johnson*, 191 F.3d 607, 629 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000), however, the United States Court of Appeals for the Fifth Circuit rejected this precise argument. Distinguishing the Texas sentencing scheme from the Maryland scheme because Texas jurors are not required to agree as to the specific evidence they find mitigating, the court then stated: "The Texas scheme allows a single juror to give effect to mitigating evidence by voting 'No' on any special issue. The fact that they do not know the effect of their answers does not subject [the defendant] to cruel and unusual punishment." In light of *Hughes*, the Court finds that the state court's rejection of this claim is neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Mills v. Maryland*. The Court will deny Adams's eighth claim.

Adams's ninth claim is that the State's failure to provide meaningful appellate review of whether sufficient evidence exists in the record to support the jury's verdict with regard to mitigating evidence violates the Eighth Amendment's prohibition against cruel and unusual punishment. This claim was adjudicated on the merits by the state court on direct appeal, *see Adams v. State*, No. AP-75,023, 2007 WL 1839845 slip op. *10 (Tex. Crim.App. June 27, 2007), so the issue for this Court is whether the state court's decision was directly contrary to, or the result of an unreasonable determination of, clearly established federal law, as determined by the Supreme Court of the United States.[6]

---

[6]  In Adams's state post-conviction proceedings, the state court incorrectly stated that the claim was procedurally barred because it had not been raised on direct appeal, but then also denied the claim on its merits. *See* SHR Vol. 1, p. 296 - 97, Conclusions of Law 12 and 13. Under these circumstances, the Court does not apply the analysis mandated in *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006), and *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.), *cert. denied*, 541 U.S.

For Adams to be sentenced to death the jury had to find beyond a reasonable doubt that there was a probability that he would be a continuing threat to society, find beyond a reasonable doubt that he either caused Vandever's death at issue or knew that such death was likely to occur, and find that there were not mitigating circumstances sufficient to justify sentencing the defendant to life imprisonment, rather than death. Under Texas law, the Texas Court of Criminal Appeals will, if warranted, review whether sufficient evidence in the record exists to support the findings as to both future dangerousness and causation of or knowledge of the likelihood of death, but it will not review whether sufficient evidence in the record supports the finding of insufficient mitigating circumstances. *See, e.g., Green v. State*, 934 S.W.2d 92, 106-07 (Tex. Crim. App. 1996).

Adams claims that this refusal is contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in *Parker v. Digger*, 498 U.S. 308, 321 (1991) and *Clemons v. Mississippi*, 494 U.S. 738, 749 (1990), both of which held that appellate courts must provide meaningful appellate review of a death sentence in order for a state's death penalty scheme to be considered constitutional. In *Woods v. Cockrell*, 307 F.3d 353, 359-60 (5th Cir. 2002), the United States Court of Appeals for the Fifth Circuit stated:

> We held in *Moore* that Texas is within the ambit of federal law as interpreted by the United States Supreme Court. See *Moore,* 225 F.3d at 507. We did so in view of *Tuilaepa v. California*, 512 U.S. 967, 114 S. Ct. 2630, 129 L.Ed.2d 750 (1994), in which the Supreme Court distinguished between the jury's "eligibility decision" and its "selection decision." It is the eligibility decision that must be made with maximum transparency to "make rationally reviewable the process for imposing a sentence of death." *Moore*, 225 F.3d at 506 (quoting *Tuilaepa*, 512 U.S. at 973., 114 S.Ct. 2630.) On the other hand, a jury is free to consider a " myriad of factors to determine whether death is the appropriate punishment. Indeed, the sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class eligible for that

1087 (2004).

24

penalty." 225 F.3d at 506 (quoting 512 U.S. at 979-80, 114 S.Ct. 2630.) It is the jury's subjective and "narrowly cabined but unbridled discretion to consider any mitigating factors," 225 F.3d at 507, that Texas refrains from independently reviewing. We continue to hold that Texas may correctly do so.

In light of the Fifth Circuit's holding in *Woods*, the Court finds that the state court's rejection of this claim is neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Parker*, *Clemons*, and *Tuilaepa*. The Court will deny Adams's ninth claim.

Adams's tenth and final claim is that the Texas death penalty statute violates the Eighth and Fourteenth Amendments because it allows a jury unbridled discretion to determine who should live or die. This claim was adjudicated on the merits on direct appeal, see *Adams v. State*, No. AP-75,023, 2007 WL 1839845 slip op. *10-11 (Tex. Crim.App. June 27, 2007), so the issue for this Court is whether the state court's decision was directly contrary to, or the result of an unreasonable determination of, clearly established federal law, as determined by the Supreme Court of the United States.[7]

The Eighth Amendment's ban on cruel and unusual punishment requires that a state's capital sentencing statutes accomplish two purposes. First, the scheme must channel the sentencer's discretion in order to genuinely narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a more severe sentence on the defendant compared with other defendants found guilty of murder. Once a defendant has been found death eligible, the sentencing scheme must allow the sentencer to consider any relevant evidence that might lead it to decline to

---

[7] In Adams' state post-conviction proceedings, the court held that the claim was not cognizable because it was raised and rejected on direct appeal, but also denied the claim on the merits. Under these circumstances, the Court does not apply the analysis mandated in *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006), and *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004).

impose the death penalty.  See *McCleskey v. Kemp*, 481 U.S. 279, 305-06 (1987).

The Justices have recognized that the unfettered discretion allowed at the death imposition stage undermines, to some extent, the attempt to eliminate arbitrariness at the death penalty stage.  For example, in *Callins v. Collins*, 510 U.S. 1141, 1144 (1994), Justice Blackmun, dissenting from the denial of *certiorari*, stated: "Experience has taught us that the constitutional goal of eliminating arbitrariness and discrimination from the administration of death . . . can never be achieved without compromising an equally essential component of fundamental fairness - individualized sentencing." In *Johnson v. Cockrell*, 306 F.3d 249 (5th Cir. 2002), *cert. denied*, 538 U.S. 926 (2003), however, the United States Court of Appeals for the Fifth Circuit denied a COA on this very claim.  In light of *Johnson*, the Court finds that the state court's rejection of Adams's tenth and final claim is neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *McCleskey*.  The Court will deny this claim.

**Conclusion**

For the above reasons, the Court will dismiss Adams's second and third claims with prejudice, deny his other eight claims, and deny his application.  An order an judgment will be entered.

**SIGNED this 26th day of July, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE